Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| JORGE GANDIA PORTELA<br><br>Recurrido<br><br>v.<br><br>MAYRA SOLER MUTT<br><br>Peticionaria | KLCE202400026 | *Certiorari*<br>procedente del Tribunal de Primera Instancia, Sala de Mayagüez<br><br>Caso Núm. MZ2022CV00881<br><br>Sobre: Liquidación de Comunidad de Bienes |

Panel integrado por su presidente el Juez Bermúdez Torres, el Juez Adames Soto y la Juez Aldebol Mora

**SENTENCIA**

En San Juan, Puerto Rico, a 3 de abril de 2024.

I.

Vigente su matrimonio con la señora Sra. Mayra Soler Mutt, el 16 de junio de 1992, el Sr. Jorge Gandía Portela adquirió el 20% de las acciones de la corporación Roberto Gandía Distributors Inc. (RGD). Decretado roto y disuelto el vínculo conyugal en el año 2006, en 2011 RGD se fusionó con Gandía Group, adquiriendo esta última todos los bienes y negocios de RGD.

El 15 de junio de 2022, el señor Gandía Portela instó *Demanda* sobre liquidación de bienes gananciales contra la señora Soler Mutt. El 26 de julio de 2022, la señora Soler Mutt presentó *Contestación a Demanda, Reconvención y Demanda contra Terceros.* Demandó a RGD, y a The Gandía Group Inc. (Gandía Group), alegando ser accionista de dichas corporaciones. Sostuvo que, también procedía la valorización de la comunidad post divorcio. Oportunamente, el 5 de agosto de 2022, el señor Gandía Portela presentó *Réplica a Reconvención.* Alegó que la señora Soler Mutt no era accionista de Gandía Group.

Tras varias incidencias procesales, el 25 de octubre de 2023, se celebró la conferencia inicial para el manejo del caso donde se eligió al CPA Fernández Pelegrina para valorar las acciones corporativas. El 28 de noviembre de 2023, el señor Gandía Portela instó *Moción Solicitando que se Enmiende la Minuta* y, entre otras cosas, solicitó que el periodo de valorización fuera desde la fecha de radicación del divorcio **hasta tres (3) años anteriores a dicha fecha**. Mediante *Resolución* emitida el 29 de noviembre de 2023, notificada el 5 de diciembre de 2023, el Foro *a quo* resolvió que, sobre el periodo para realizar la valorización de las acciones corporativas sería desde los tres (3) años antes de la radicación del divorcio entre las partes.

El 18 de diciembre de 2023, la señora Soler Mutt instó *Moción de Reconsideración*, reclamando que, el periodo a considerarse debía ser desde la fecha del divorcio hasta la liquidación de la comunidad de bienes que conforman ambas partes. El 18 de diciembre de 2023, notificada el 19, el Foro primario declaró "No Ha Lugar" la *Moción*.

Aun en desacuerdo, el 8 de enero de 2024, la señora Soler Mutt acudió ante nuestra consideración mediante *Petición de Certiorari*. Sostiene:

**COMETIÓ ERROR DE DERECHO EL TPI AL DETERMINAR QUE LA VALORACIÓN DE LAS ACCIONES CORPORATIVAS SERÁ 3 AÑOS ANTES DE LA RADICACIÓN DEL DIVORCIO ENTRE LAS PARTES, CUANDO NUESTRO ORDENAMIENTO JURÍDICO HA DETERMINADO QUE EL PERIODO DE VALORIZACIÓN DE LOS BIENES DE LA COMUNIDAD POST GANANCIAL COMIENZA DESDE LA DISOLUCIÓN DEL MATRIMONIO Y SE EXTIENDE HASTA QUE SE LIQUIDE FINALMENTE DICHA COMUNIDAD DE BIENES.**

Evaluado el recurso, el 12 de enero de 2024, emitimos *Resolución* concediéndole término de diez (10) días al señor Gandía Portela para que fijara su posición. Según requerido, el 22 de enero de 2024, compareció mediante *Memorando en Oposición a*

*Expedición de Auto de Certiorari.* Aduce que, el periodo de valorización debe ser el del matrimonio por ser dicho periodo el ganancial y que, existe una estipulación que establece el punto de partida de la liquidación.

En su *Breve Réplica a Memorando en Oposición* instada el 24 de enero de 2024, la señora Soler Mutt reiteró que, el periodo a considerarse debe ser, desde la fecha del divorcio, hasta que se liquide la comunidad de bienes post ganancial que existe entre las partes. Contando con el beneficio de las comparecencias de las partes, el expediente judicial y la transcripción de la vista de la fecha pertinente,[1] procedemos a resolver.

II.
A.

La sociedad de gananciales es el régimen económico supletorio que establece el Código Civil de Puerto Rico de 1930 para que rija durante un matrimonio a falta de capitulaciones matrimoniales válidas[2]. Dicho régimen comienza el día de la celebración del matrimonio y concluye al disolverse, ya sea por muerte, **divorcio** o nulidad[3].

Durante la vigencia de dicho régimen económico, existe una presunción de ganancialidad sobre todos los bienes del matrimonio, así como sobre las deudas y obligaciones que fueran asumidas por cualquiera de los cónyuges[4]. Así, serán bienes gananciales: (1) los adquiridos por título oneroso durante el matrimonio a costa del caudal común, bien se haga la adquisición para la comunidad, bien

---

[1] El 31 de enero de 2024, emitimos *Resolución* ordenándole al Tribunal de Primera Instancia, Sala de Mayagüez, que permitiera a la señora Soler Mutt regrabar a su costo la vista celebrada el 25 de octubre de 2023 y así perfeccionar el recurso presentado. A su vez, ordenamos a la señora Soler Mutt que, en un término de treinta (30) días contados a partir de la entrega de la regrabación, procediera a entregar la transcripción de esta. El 23 de febrero de 2024, compareció la señora Soler Mutt mediante *Moción Sometiendo Regrabación de Vista*, haciendo entrega de la transcripción de la vista celebrada el 7 de noviembre de 2023.
[2] *BL Investment Inc.* v. *Registrador*, 181 DPR 5, 13 (2011).
[3] Arts. 1315 y 1328 del Código Civil de Puerto Rico de 1930, 31 LPRA § 3681 y § 3712. Énfasis nuestro.
[4] *BL Investment Inc.,* 181 DPR, pág. 13; *Muñiz Noriega* v. *Muñoz Bonet,* 177 DPR 967, 978-979 (2010).

para uno solo de los esposos; (2) los obtenidos por la industria, sueldo o trabajo de los cónyuges o de cualquiera de ellos; y (3) los frutos, rentas o intereses percibidos o devengados durante el matrimonio, procedentes de los bienes comunes o de los peculiares de cada uno de los cónyuges[5].

En cuanto a los bienes privativos, nuestro ordenamiento jurídico dispone que el régimen de bienes gananciales puede coexistir con el patrimonio individual de cada cónyuge. En específico, el Artículo 1299 del Código Civil de 1930 dispone que, son bienes propios de cada uno de los cónyuges: (1) los que aporte al matrimonio como de su pertenencia, (2) los que adquiere durante el matrimonio a título lucrativo, bien sea por donación, legado o herencia, (3) los adquiridos por derecho de retracto o por permuta con otros bienes pertenecientes a uno solo de los cónyuges, y (4) aquellos bienes comprados con dinero exclusivo de un cónyuge particular [6].

Ahora bien, según antes esbozado la sociedad legal de gananciales concluye y se extingue al disolverse el matrimonio [7]. En consecuencia, las ganancias o los beneficios obtenidos durante su vigencia se adjudican por mitad a los excónyuges[8]. Luego de esta disolución, surge entre los cónyuges una comunidad ordinaria compuesta de aquellos bienes que eran gananciales y en los que ambos participaban por partes iguales mediante cuotas independientes, alienables y homogéneas[9]. Esta comunidad de bienes postganancial estará gobernada por las normas establecidas

---

[5] *Muñiz*, 177 DPR, pág. 979, citando el Art. 1301 del Código Civil de Puerto Rico de 1930, 31 LPRA § 3641.
[6] 31 LPRA § 3631.
[7] Íd., § 381.
[8] Íd., § 3621; *Montalván* v. *Rodríguez*, 161 DPR 411, 446 (2004).
[9] *Diaz Rodríguez v. García Neris*, 208 DPR 106 (2022); *Betancourt González* v. *Pastrana Santiago*, 200 DPR 169 (2018)

en los Art. 326 al 340 del Código Civil, a falta de contrato o de disposiciones especiales[10].

B.

Todo dictamen emitido por el Tribunal de Primera Instancia en el curso del proceso judicial es revisable, bien sea por apelación o por *certiorari*. El auto de *certiorari* es un remedio procesal utilizado para que un tribunal de mayor jerarquía pueda corregir un error cometido por un tribunal inferior. Distinto a los recursos de apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de *certiorari* de manera discrecional. Esta discreción, se ha definido como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera[11]. No significa poder actuar en una forma u otra, haciendo abstracción del resto del derecho, porque, ciertamente, eso constituiría un abuso de discreción[12].

Con el fin de que podamos ejercer de una manera sabia y prudente la facultad discrecional de entender o no en los méritos de los asuntos que nos son planteados mediante el recurso de *certiorari*, la Regla 40 del Reglamento de este Tribunal nos señala los criterios que debemos considerar al atender una solicitud de expedición de un auto de *certiorari*. Dispone:

> **Regla 40. Criterios para expedición del auto de *certiorari***
> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
> **(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.**

---

[10] *Díaz Rodríguez,* 208 DPR, pág. 716.
[11] *Pueblo* v. *Rivera Montalvo,* 205 DPR 352, (2020); *Negrón* v. *Srio de Justicia,* 154 DPR 79 (2001).
[12] *Medina Nazario* v. *McNeil Healthcare LLC,* 194 DPR 723, 728-729 (2016); *Pueblo* v. *Custodio Colón,* 192 DPR 567, 588 (2015).

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
(F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia[13].

El *certiorari,* como recurso extraordinario discrecional, debe ser utilizado con cautela y solamente por razones de peso[14]. La denegatoria de expedir un auto de *certiorari,* no constituye una adjudicación en los méritos. Es el ejercicio de nuestra facultad discrecional para no intervenir a destiempo con el trámite pautado por el foro de instancia, evitando que se dilate innecesariamente la resolución final del pleito[15]. La parte afectada con la denegatoria de expedirse el auto de *certiorari,* tiene a su favor el revisar el dictamen final, cuando se resuelva la causa de acción por el foro primario[16].

Además, como se sabe, "los tribunales apelativos no debemos, con relación a determinaciones interlocutorias discrecionales procesales, sustituir nuestro criterio por el ejercicio de discreción del tribunal de instancia, salvo cuando dicho foro haya incurrido en arbitrariedad o craso abuso de discreción"[17]. El tribunal de instancia goza de amplia discreción para pautar el manejo de los casos ante su consideración, a fin de lograr la búsqueda de la verdad y que sean adjudicados de manera rápida y correctamente. Como foro intermedio apelativo, no vamos a intervenir con el ejercicio de tal autoridad, excepto se demuestre que medió craso abuso de discreción, que hubo una interpretación o aplicación errónea de una

---

[13] 4 LPRA Ap. XXII-B, R. 40. Énfasis nuestro.
[14] *Pérez* v. *Tribunal de Distrito*, 69 DPR 4, 7 (1948).
[15] Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B R.40; *Filiberty* v. *Soc. de Gananciales*, 147 DPR 834, 838 (1999).
[16] *Negrón*, 154 DPR, pág. 93; *Bco. Popular de P.R.* v. *Mun. de Aguadilla*, 144 DPR 651, 658 (1997).
[17] *Meléndez* v. *Caribbean Int'l News*, 151 DPR 649, 664-665 (2000); *Lluch* v. *España Service Sta.*, 117 DPR 729, 745 (1986); *Valencia, Ex Parte*, 116 DPR 909, 913 (1986).

norma procesal o sustantiva de derecho y que la intervención revisora evitará perjuicio sustancial a la parte alegadamente afectada[18].

III.

En el presente caso, la señora Soler Mutt sostiene que erró el Foro primario al emitir una *Resolución* mediante la cual determinó que el periodo de valorización de las acciones corporativas adquiridas por las partes cuando aún existía una sociedad legal de gananciales entre estos debía determinarse durante el periodo de tres (3) años anteriores a la radicación del divorcio de las partes. Le asiste razón. Veamos por qué.

De la transcripción de la vista celebrada el 7 de noviembre de 2023, así como del expediente ante nos, no surge que las partes hayan estipulado del término de tres (3) años previos al divorcio para la valorización de las acciones de la corporación. Fue el Foro primario quien, sin expresar fuente jurídica alguna para su determinación, estableció el periodo de tres (3) años antes de la fecha de la radicación del divorcio[19].

Según hemos establecido, luego de la disolución del matrimonio existe una comunidad de bienes postganancial, la cual comienza a existir desde la fecha del divorcio. A su vez, esta comunidad de bienes postganancial se regirá por los términos y condiciones establecidos en el Código Civil, de no mediar contrato o disposiciones especiales para hacerlo en forma distinta. Ante esto, el Foro primario no podía establecer un nuevo término para la valorización, como lo fue el de tres (3) años antes del divorcio. En su lugar, debió ordenar que el proceso de valorización de las acciones y los bienes de la comunidad postganancial comenzara desde la

---

[18] *García* v. *Asociación*, 165 DPR 311 (2005); *Meléndez*, 151 DPR, págs. 664-665.
[19] Véase: líneas 6 a la 9 de la página 15 de la Transcripción de la Vista del 7 de noviembre de 2023.

fecha del divorcio, hasta que se lograra la liquidación definitiva de la comunidad. Al actuar en contravención de lo antes mencionado, erró el Tribunal de Primera Instancia.

IV.

Por los fundamentos anteriormente expuestos, se *expide* el auto de *certiorari* y se *revoca* la *Resolución* recurrida. Se ordena la continuación de los procedimientos de forma compatible con lo aquí resuelto.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones